**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

KIMBERLEY L.,

                Plaintiff,

    v.                                                                          1:22-CV-01198
                                                                    (DNH/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>Attorney for Plaintiff<br>6000 N. Bailey Avenue, Suite 1A<br>Amherst, New York 14226 | JUSTIN M. GOLDSTEIN, ESQ. |
| U.S. SOCIAL SECURITY ADMINISTRATION<br>Attorney for Defendant<br>6401 Security Boulevard<br>Baltimore, Maryland 21235 | GEOFFREY M. PETERS, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

     Kimberley L. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled before July 7, 2021.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt.

Nos. 13 & 14. For the reasons set forth below, the Court recommends that the Administrative Law Judge's decision be affirmed.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff was born in 1966. Dkt. No. 8, Admin. Tr. ("Tr."), at p. 55. Plaintiff reported completing eleventh grade. Tr. at p. 340. She has past work experience as a home health aide beginning in 2013. Tr. at p. 340. Plaintiff alleges disability based upon anxiety, a panic disorder, arthritis, major back pain, and chronic obstructive pulmonary disease ("COPD"). Tr. at p. 56. On October 8, 2020, Plaintiff applied for a period of disability and disability insurance benefits and supplemental security income ("SSI"). Tr. at p. 15. She initially alleged a disability onset date of March 9, 2020, but later amended it to July 27, 2020. Tr. at p. 15. Plaintiff's application was initially denied on February 5, 2021, Tr. at p. 179, and was again denied after request for reconsideration. Tr. at pp. 197-222. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on May 21, 2021. Tr. at pp. 227-28. Plaintiff appeared and testified at a hearing before ALJ Shawn Bozarth on December 17, 2021. Tr. at pp. 35-54. The ALJ also considered the testimony of a vocational expert. Tr. at p. 26. On January 20, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 15-27. On September 15, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 5-7.

### B. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through December 21, 2024, and that she had not engaged in substantial gainful activity during the period since her alleged onset date of July 27, 2020. Tr. at pp. 17-18. Second, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the neck, COPD, and emphysema. Tr. at p. 18. Further, the ALJ found that beginning August 28, 2020, Plaintiff had the additional severe impairment of generalized anxiety disorder. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 19. Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") "to perform work at the light exertion level," with the following limitations:

> [S]he can only occasionally climb ramps and stairs. She can occasionally balance, crouch, stoop, kneel, crawl, and bend. She is limited to jobs that do not have exposure to dangerous machinery or moving machine parts as well as unprotected heights. She can reach frequently in all directions with the left upper extremity. She should avoid even moderate exposure to respiratory irritants, such as chemicals, dust, odors, fumes, and gases, extremes of temperature and humidity, as well as poorly ventilated work areas. She can frequently rotate, extend, and flex her neck and head.

Tr. at p. 21. The RFC also states that beginning August 28, 2020, Plaintiff is limited to low stress jobs which the ALJ defines as:

3

> [G]oal oriented and not done at an assembly line or at a production quota pace, a job in which she is limited to occasional decision-making, occasional changes of workplace setting, and occasional changes to workplace routine, and a job in which she has only occasional contacts with supervisors, coworkers, and customers.

Tr. at pp. 21-22. Fifth, the ALJ found that since the alleged onset date, Plaintiff was unable to perform any past relevant work. Tr. at p. 25. Sixth, the ALJ found that Plaintiff's age category changed from Closely Approaching Advanced Aged to Advanced Age on July 7, 2021. *Id.* Seventh, the ALJ found that prior to July 7, 2021, after considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform several jobs existing in "significant numbers in the national economy." Tr. at p. 26. These jobs include routing clerk, mail clerk, and photocopy machine operator. Tr. at pp. 26-27. Eighth, the ALJ found that beginning on July 7, 2021, the day of Plaintiff's age category change, after considering Plaintiff's age, education, work experience, and RFC, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. at p. 27. The ALJ, therefore, concluded that Plaintiff was not disabled prior to July 7, 2021, but became disabled thereafter. *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because he relied on his lay opinion and failed to fully develop the record. Dkt. No. 13 ("Pl.'s Br.") at p. 11. In response, Defendant asserts that the ALJ properly evaluated the record and did not err in crediting of some of Plaintiff's complaints over certain medical opinions. Dkt. No. 14 ("Def.'s Br.") at pp. 6-18.

An RFC determination must be consistent with the record as a whole and need not match any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker v. Berryhill*, 2018 U.S. Dist. LEXIS 36509, at *12 (W.D.N.Y. Mar. 6, 2018). Likewise, an ALJ may not substitute their lay opinion for that of a competent medical opinion. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). "If the ALJ does not explicitly articulate, or a reviewing court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ . . . interpreted the medical evidence based on his own lay judgment," which is considered error. *Mary R. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 171697, at *5 (W.D.N.Y. Sept. 22, 2022).

### A. Substantial Evidence

#### *i. Mental RFC*

Here, Plaintiff argues that "[t]he ALJ did not rely on a medical opinion to formulate the mental portion of the RFC finding" and further "failed to identify evidence

7

in the record [which] supported the abilities indicated in the RFC finding." Pl.'s Br. at p. 13.

In making his mental RFC determination, the ALJ considered: (i) Plaintiff's medical records, (ii) Plaintiff's testimony, (iii) a mental health evaluation at Aptihealth, (iv) a neurology evaluation by Dr. Dinar, (v) a psychiatric consultative exam by Dr. Deneen, and (vi) assessments from State agency psychological consultants, among other evidence in the record. Tr. at pp. 22-25. These assessments concluded that Plaintiff's mild impairments as to attention, and understanding and applying information were not severe enough to "pose more than minimal limitations on [Plaintiff's] daily functioning." Tr. at pp. 62, 79, 100, 121, 141, 162. As the ALJ explained, this finding was at odds with Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her symptoms]." Tr. at p. 24. Ultimately, the ALJ credited the assessments more heavily than Plaintiff's complaints, citing to Plaintiff's "conservative treatment and lack of more serious objective findings." *Id.*

Contrary to Plaintiff's claims, the ALJ's determination was based on substantial evidence. Although Plaintiff alleges that the ALJ did not rely on a medical opinion or identify evidence in support of the mental RFC determination, Pl.'s Br. at p. 13, the limitations set forth are directly traceable to Plaintiff's subjective complaints. It is not reversible error for an ALJ to credit a plaintiff's subjective complaints and include "in the RFC finding a limitation that was not identified by the medical opinions of record."

*Valentin B. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 4350, at *14 (W.D.N.Y. Jan. 10, 2023).

The ALJ limited Plaintiff to low stress jobs which the ALJ defined as:

[1] [G]oal oriented and not done at an assembly line or at a production quota pace, a job in which she is limited to [2] occasional decision-making, [3] occasional changes of workplace setting, [4] and occasional changes to workplace routine, [5] and a job in which she has only occasional contacts with supervisors, coworkers, and customers.

Tr. at p. 21-22.

The record supports the ALJ's decision to limit Plaintiff to goal oriented jobs because he found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. *See Andrea N. v. Saul*, 2020 U.S. Dist. LEXIS 40179, at *10-11 (N.D.N.Y. Mar. 9, 2020); *Eby v. Colvin*, 227 F. Supp. 3d 275, 279-80 (W.D.N.Y. 2017). The ALJ found that Plaintiff's anxiety increased, beginning in August 2020, and this, in combination with her attention and concentration impairment would render high-stress and fast-paced jobs, such as working on a production line, unsuitable. Tr. at pp. 21-25; *see Martinez v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 55648, at *47-49 (S.D.N.Y. Mar. 30, 2023).

Plaintiff was further limited to occasional decision-making as well as occasional changes of workplace setting and routine. Tr. at p. 22. As discussed by the ALJ, the medical opinions assessed Plaintiff as having no or mild limitations. Tr. at p. 24-25. Additionally, the ALJ considered Plaintiff's Function Report where Plaintiff "reported that she did not handle stress well at all, and lately had difficulties with changes in

9

routine." Tr. at pp. 21, 363. The ALJ reasonably credited these subjective complaints due to inconsistencies between the medical assessments and Plaintiff's documented increase in anxiety symptoms. Tr. at p. 25. Plaintiff's increasing anxiety along with her reported inability to handle stress well and difficulty with changes in routine are logically linked to the ALJ's mental RFC finding because these complaints would reasonably make it difficult to frequently perform these work functions. *See Perkinson v. Kijakazi*, 2022 U.S. Dist. LEXIS 176838, at \*21 (N.D.N.Y. Sept. 29, 2022); *Damaris H. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 224719, at \*31 (W.D.N.Y. 2022).

The ALJ notes in his decision that Plaintiff has moderate limitation in interacting with others, specifically regarding Plaintiff's documented anxiety with leaving the house, due in part to Covid-19, and reported difficulty being around others. Tr. at pp. 20, 22, 45. It was therefore reasonable for the ALJ to accommodate Plaintiff's anxiety by limiting her interactions around others. *See Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12-13 (W.D.N.Y. 2021). The ALJ also mentions that Plaintiff reports getting along well with authority figures. Tr. at pp. 20, 362. In analyzing Plaintiff's limitations relating to Paragraph B criteria, the ALJ noted Plaintiff's self-described ability to video chat with her friends "almost daily." Tr. at pp. 20, 361. Though the contact is virtual, it still goes to support the ALJ's finding of a moderate limitation. *See Tammy T. v. Kijakazi*, 2022 U.S. Dist. LEXIS 3751, at \*26 (D. Vt. Jan. 7, 2022) ("Even assuming Plaintiff no longer sees these friends in-person, her continued ability to socialize online can be some evidence supporting the conclusion that Plaintiff has only

a 'moderate' limitation in interacting with others."). Though there is no objective medical evidence that specifically points to this limitation, an RFC determination must only be consistent with the record as a whole and need not match any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x at 56. Notably, this limitation deviates from Dr. Deneen's consultative examination and is in fact more restrictive than his determination that Plaintiff has no limitation in "interact[ing] adequately with supervisors, coworkers, and the public." Tr. at p. 58. This is yet another example of the ALJ granting greater limitations than what the record supports by crediting Plaintiff's subjective complaints.

While it is true, as both parties point out, that the ALJ did not formally address the persuasiveness of Dr. Deneen's consultative examination, this was only harmless error. Dr. Deneen's opinion largely echoes those of the State agency medical consultants, finding only mild impairment in attention and concentration. Tr. at pp. 429-33. The ALJ acknowledges these findings but does not assess them. Tr. at p. 24. However, even if the ALJ had done so, there is no reasonable likelihood that it would have changed the outcome given that Dr. Deneen's opinion is not favorable to Plaintiff. *See Young v. Kijakazi*, 2021 U.S. Dist. LEXIS 173407, at *31 (S.D.N.Y. Sept. 13, 2021); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). Plaintiff further argues that "the record does not contain a sufficient medical opinion addressing mental abilities and limitations," which is seemingly an attempt to obtain a more favorable medical opinion to support a more restrictive RFC. Pl.'s Br. at p. 11-12. Even if the case was remanded,

11

a new medical opinion would be unnecessary, as the ALJ relied on substantial evidence in the record which found no to mild limitations. *See Orlando A. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 146434, at *18 (W.D.N.Y. Aug. 21, 2023). Accordingly, the ALJ's failure to assess Dr. Deneen's findings was only harmless error.

      Plaintiff further argues that the RFC determination was "too generic to account for Plaintiff's individualized reaction to stress and functional abilities." Pl.'s Br. at p. 21. Plaintiff's reliance on SSR 85-15, and the cases which refer to it implicitly and explicitly, is misplaced. SSR 85-15 characterizes stress as "highly individualized," and the Commissioner is required to "make specific findings about the nature of [Plaintiff's] stress, the circumstances that trigger it, and how those factors affect [Plaintiff's] ability to work." SSR 85-15; *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006). However, SSR 85-15 "does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments." *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012). As a result, "courts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue." *Gomez v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 49261, at *10 (W.D.N.Y. Mar. 20, 2020). "So long as the decision reveals that the ALJ considered and accounted for stress limitations—even if not in the most explicit terms—remand is not warranted." *Id.* at 10-11. In making the RFC determination, the ALJ clearly accounted for many of Plaintiff's subjective complaints and the mild limitations found in the medical opinions of record. Thus, remand is not warranted in this case.

*ii. Physical RFC*

In furtherance of her request for remand, Plaintiff argues that the ALJ did not rely on substantial evidence when making his physical RFC determination. Pl.'s Br. at pp. 22, 24. Plaintiff also takes issue with the fact that the prior administrative medical findings were done without reviewing the most recent medical records (i.e., those after December 4, 2020). Pl.'s Br. at pp. 22-23.

The ALJ determined that Plaintiff had the physical RFC to perform light work with the following limitations:

> [S]he can only occasionally climb ramps and stairs. She can occasionally balance, crouch, stoop, kneel, crawl, and bend. She is limited to jobs that do not have exposure to dangerous machinery or moving machine parts as well as unprotected heights. She can reach frequently in all directions with the left upper extremity. She should avoid even moderate exposure to respiratory irritants, such as chemicals, dust, odors, fumes, and gases, extremes of temperature and humidity, as well as poorly ventilated work areas. She can frequently rotate, extend, and flex her neck and head.

Tr. at p. 21. In making this determination, the ALJ considered Plaintiff's complaints made in her Function Report, primary care records, treatment from specialists, and prior administrative medical findings from State agency medical consultants. Tr. at pp. 22-24. Therein, Plaintiff complains of neck, chest, back, and arm pain rendering certain activities difficult. She also reports difficulty when walking more than a half hour (but later reports she can only walk for ten minutes before needing a break), coughing, shortness of breath, and wheezing. Tr. at pp. 22, 353-54, 357, 362, 470, 473, 587, 633, 643. However, Plaintiff also reports being able to do household chores, shopping online,

and cooking for herself when no one else is home.  Tr. at pp. 354, 358. 359, 360.  State agency medical consultant, Dr. Gandhi, found Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could frequently balance, stoop, kneel, crouch and crawl, and was limited in reaching in front of her and overhead.  Tr. at pp. 82-83.  Dr. Angelotti, another State agency medical consultant, reviewed this finding and largely adopted it except for finding Plaintiff could only occasionally stoop and crawl.  Tr. at pp. 103-06.  The ALJ found these assessments partially persuasive because while the consultants did not examine Plaintiff, the assessments were within their area of specialization and their "rationale indicate[d] that they ha[d] thoroughly reviewed the record then-extant."  Tr. at p. 24.  The ALJ concluded that "a limitation to light exertion work with limited postural activities and environmental limitations, and limited use of the left upper extremity is generally consistent with the claimant's combined musculoskeletal and respiratory impairments" and cited her "conservative treatment and lack of more serious objective findings."  *Id.*

In certain circumstances "where the medical evidence, combined with Plaintiff's own statements, indicates relatively mild physical impairment," the ALJ is permitted "to make an RFC assessment without an expert medical opinion."  *Glena v. Colvin*, 2018 U.S. Dist. LEXIS 19833, at *15 (W.D.N.Y. Feb. 6, 2018).  Here, the medical evidence shows only mild physical impairments, Tr. at pp. 353-62, 424-27, 470-84, 510-24, 564, 575-590, 602-03, 627-99, and the ALJ gave Plaintiff greater limitations than those warranted by the medical evidence by crediting some of her subjective complaints.  Tr.

at pp. 21-25. As such, it was reasonable for the ALJ to make an RFC determination without an expert medical opinion separate from the prior administrative medical findings.

The ALJ did not rely on his own lay opinion in formulating this RFC. Plaintiff contends that "it is unclear how the ALJ arrived at the new findings," and she particularly points to the finding of emphysema and greater environmental limitations along with greater postural and new neck motion limitations. Pl.'s Br. at p. 23. First, the ALJ clearly noted the finding of emphysema on the May 2021 CT scan. Tr. at pp. 23, 646, 650, 677. The environmental limitations were directly taken from the prior administrative medical findings which were assessed in relation to her history of COPD and not her emphysema. Tr. at 67, 84, 105, 126, 146, 167. Finally, the ALJ explained the greater postural and new neck motion limitations were due to a consideration of Plaintiff's subjective complaints, "as well as the finding of decreased range of motion in her cervical spine and imaging showing mild degeneration of her cervical spine." Tr. at pp. 24-25. It is entirely permissible for an ALJ to assess greater limitations which are supported by the medical evidence of record in addition to those limitations assessed by the State agency consulting physicians, and therefore the ALJ did not substitute his own lay opinion. *See Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 499, 505 (W.D.N.Y. 2020); *Catalfamo v. Berryhill*, 2019 U.S. Dist. LEXIS 39671, at *4-5 (W.D.N.Y. Mar. 12, 2019).

Further, the existence of evidence in the record from after the State agency medical consultants' review does not render the prior administrative finding stale. There is no "unqualified rule that a medical opinion is superseded by additional material in the record," particularly when "the additional evidence does not raise doubts as to the reliability of [the State agency consultant's opinion]." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Here, Plaintiff takes issue with the fact that:

> [N]o medical professional reviewed updated records from Arthritis Care dated through June 29, 2021, Pulmonary & Critical Care Services dated through June 25, 2021, Capital District Podiatry from June 2021, Aptihealth dated November 4, 2021, Hudson Shores Medical Group dated through July 16, 2021, St. Peters Neurology dated December 14, 2020[,] to July 24, 2021, and Samaritan Hospital dated from February 4, 2020 to September 13, 2021.

Pl.'s Br. at p. 23; *see* Tr. at pp. 627-737. However, a review of these records does not provide any information that places the reliability of either prior administrative finding into question, as the findings are largely similar to the medical evidence upon which the State agency medical consultants relied. As a result, it was not improper for the ALJ to partially rely on the State agency consultants in making his RFC determination. *Camille v. Colvin*, 652 F. App'x at 28 n.4.

Finally, Plaintiff disagrees with the ALJ's finding that she could have performed light work prior to her disability onset date and argues that she could only perform sedentary work. Pl.'s Br. at p. 24. In support of this, Plaintiff only references her own complaints and prior treatment for dyspnea. Pl.'s Br. at p. 24-25. Plaintiff claims that her self-imposed limitations "would . . . impact exertion" but does not point to any

objective evidence in the record which supports her assertion. Pl.'s Br. at p. 25. Thus, Plaintiff essentially asks this court to reweigh the evidence in her favor, but this is not the function of the reviewing court. *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993). The ALJ previously weighed this evidence in his decision and gave it reasonably appropriate weight in light of other evidence in the record. Tr. at p. 25; *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Therefore, remand is not warranted on this ground.

### B. Duty to Develop the Record

The ALJ has an affirmative duty to develop the record before making a disability determination. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). However, "[t]he ALJ is not required to seek additional evidence when the evidence already in the record is 'adequate for [the ALJ] to make a determination as to disability.'" *Jason C. v. Berryhill*, 2019 U.S. Dist. LEXIS 52287, at *14 (N.D.N.Y Mar. 28, 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). "Mere absence of some medical records does not suffice" to show reversible error or failure to develop the record. *Mauzy v. Colvin*, 2013 U.S. Dist. LEXIS 185106, at *15 (N.D.N.Y. Sept. 30, 2013).

Plaintiff argues that the ALJ failed to develop the record regarding both her physical and mental RFC determinations. Pl.'s Br. at pp. 19, 22-23. The only specific piece of evidence which Plaintiff suggests is missing from her physical RFC determination is a consultative examination. Pl.'s Br. at p. 22. Plaintiff explains that "the ALJ should have requested an opinion from a treating or examining source" because "of the deficiencies in the medical opinion record specifically identified by the

ALJ and inappropriately resolved using his own lay opinion." Pl.'s Br. at p. 19. In arguing this, Plaintiff only alleges that a proper development of the record may have resulted in more substantial limitations. Pl.'s Br. at p. 23. She does nothing further to explain what new information a consultative exam would have provided that was not already in the record. *Id.* As for her mental RFC, Plaintiff argues that the greater limitations than what the objective medical evidence would suggest is proof that the record should have been developed further. Pl.'s Br. at p. 14.

An ALJ is not required to order a consultative exam when "the facts do not warrant or suggest the need for it." *Ali D. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 126197, at *14-15 (W.D.N.Y. July 21, 2023). Consultative exams are done at the discretion of the ALJ when "try[ing] to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision." *Id.* at 14; *see also* 20 C.F.R. §§ 404.1519, 416.919. Here, the medical records are largely consistent with the medical opinion evidence, the RFC determinations were based on substantial evidence, and Plaintiff only suggests that a consultative exam *might* reveal greater limitations without any further explanation. It was therefore reasonable for the ALJ not to order a consultative examination. Similarly, Plaintiff's allegations of insufficiency relating to her mental RFC determination are unfounded given the lack of specific evidence which would be revealed upon further development.

Plaintiff's allegations of insufficiency are purely speculative given she cannot point to any specific evidence which would warrant further development of the record. In fact, when asked by the court during the Oral Hearing whether the record was complete, Plaintiff's representative explicitly affirmed that it was, providing further evidence that the ALJ satisfied his duty by taking reasonable steps to develop the record. Tr. at p. 38; *Orts v. Astrue*, 2013 U.S. Dist. LEXIS 1741, at *5 (N.D.N.Y. Jan. 7, 2013). Accordingly, the ALJ's determination will not be reversed.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits prior to July 7, 2021, be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v.*

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: November 30, 2023
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge